

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. # 2008R02060

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 26, 2009

Michael Dorra
U.S. Probation Department
Eastern District of New York
75 Clinton Street
Brooklyn, New York 11201

      Re:  United States v. Ralph Nicoletti, et al.
            Criminal Docket No. 09-002 (CBA)

Dear Mr. Dorra:

      The government writes to object to the Presentence Report of defendant Ralph Nicoletti, dated March 4, 2009. Specifically, with respect to the Guidelines calculation, the government believes that a two-level enhancement for "more than minimal planning," pursuant to U.S.S.G. § 2A2.2(b)(1), applies to the defendant's conduct in this case.

      U.S.S.G. § 2A2.2(b)(1) provides for a two-level enhancement if the assault offense committed by the defendant "involved more than minimal planning." The Application Notes explain that:

> "[M]ore than minimal planning" means more planning than is typical for commission of the offense <u>in a simple form</u>. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which [the enhancement for obstructing or impeding the administration of justice] applies. For example, waiting to commit the offense when no witnesses were present would not alone constitute more than minimal planning. By contrast, luring the victim to a specific location or wearing a ski mask to prevent identification would constitute more than minimal planning.

U.S.S.G. § 2A2.2, App. Note 2 (emphasis added);[1] see United States v. Cropper, 42 F.3d 755, 758 (2d Cir. 1994) ("More than minimal planning requires that the defendant: (1) engaged in more planning than the offense would require in its simple form; or (2) took significant steps to conceal the crime, excluding conduct that constitutes obstruction of justice.").

In United States v. Walsh, 119 F.3d 115 (2d Cir. 1997), the Second Circuit addressed the issue of what constitutes the "simple form" of an offense. The defendant in Walsh had been convicted of making a false statement to a bank in connection with a real estate scheme, in violation of 18 U.S.C. § 1014. The defendant's fraud involved lying on a loan application in which he misrepresented, among other things, his income, source of savings, and the existence of an outstanding loan. He also created a phony lease for a property he owned, falsely representing that the property had been rented. At sentencing, the district court added two levels of enhancement for "more than minimal planning." On appeal, the Second Circuit affirmed this sentencing enhancement, based on its conclusion that lying about income was the simple form of the offense and that the "concocted lease involved material added planning." Walsh, 119 F.3d at 120.

Similarly, in United States v. Lennick, 917 F. 2d 974 (7th Cir. 1990), a Section 1001 prosecution in which the defendant had falsely claimed ownership of a firearm, the Seventh Circuit found that the district court properly applied the "more than minimal planning" enhancement based on the defendant having obtained a false gun sale receipt and having hired an attorney to write to the police claiming that the defendant owned the firearm and requesting its return to the defendant. The court observed:

> The guidelines provision in question authorizes an enhancement if it can be said that the offense exceeds "that typical for commission of the offense in a simple form." Simple perjury would not involve the establishment of a "paper trail" like the one [the defendant] created.

---

[1] Prior to November 2001, the application note focused on the commission of "repeated acts over a period of time" and provided a long list of conduct that might warrant application of the enhancement. See U.S.S.G. § 1B1.1(f) (2000). The post-November 2001 version suggests a less restrictive approach, in that it no longer refers to repeated conduct nor specifies conduct that could give rise to the enhancement.

Id. at 979-80.  The Seventh Circuit further noted that while
"courts have generally applied the 'more than minimal planning'
enhancement provision to factual scenarios involving clear
examples of repeated or complex criminal activity[,] . . .
[c]ourts have not been reluctant . . . in upholding the
application of this section to activity that involves
considerably less planning . . . ."  Id. (citations omitted).

         In the context of assault offenses, courts have looked
at several factors in determining whether the crime involved more
planning than "a simple form of the offense," including:

         (1) the defendant's efforts to conceal the crime, see
United States v. Calbat, 266 F.3d 358, 364 (5th Cir. 2001)
(finding enhancement appropriate based on defendant trying to
flee the scene after hitting federal park ranger's vehicle with
his car while intoxicated); United States v. Perrien, 274 F.3d
936, 940 (5th Cir. 2001) (finding enhancement applied where
defendant, who was convicted of assaulting his children, failed
to tell his wife about, or get medical attention for, his
children's injuries); United States v. Conatser, 514 F.3d 508,
529 n. 1, concurring opinion (6th Cir. 2008) (enhancement would
have been proper based on correctional officers' failure to
provide medical care to inmates they had beaten);

         (2) the defendant's motive in committing the crime, see
United States v. Huie, 210 F.3d 363 (4th Cir. 2000) (per curiam)
(defendant's motive to attack correctional officer in order to
trigger a transfer to another facility supported enhancement);
United States v. Horsting, 204 Fed.Appx. 441, 443 (  5th Cir.
2006) (per curiam) (enhancement properly applied to racially
motivated assault);[2/]

         (3) the repetitious nature of the defendant's illegal
conduct or similar conduct, see United States v. Cianscewski, 894
F.2d 74, 82-83 (8th Cir. 1990) (three sales of stolen checks);
United States v. Fox, 889 F.2d 357, 361-62 (1st Cir. 1989) (two
fraudulent bank loans); United States v. McCarty, 151 F.3d 1031
at *2 (4th Cir. 1998) (per curiam) (three instances of the
defendant shaking his infant son, the last of which resulted in
the child's death).

_____

[2/]     Here, the defendants are already subject to a three-level
enhancement for hate crime motivation.  See Presentence Report ¶¶
18-20, 40, 46 and 53; U.S.S.G. § 3A1.1(a).

(4) the degree of planning and preparation involved in the commission of the crime, <u>see</u> <u>Huie</u>, 210 F.3d at *1 (defendant planned the attack of the correctional officer for a time when no other officers would be around, and just before attack, inserted a mouthpiece and put on weightlifting gloves and steel-toed boots); <u>United States v. Battle</u>, 174 Fed.Appx. 179, 180 (4th Cir. 2006) (per curiam) (enhancement found appropriate where defendant waited for the victim to finish showering, threw hot coffee on the victim (temporarily blinding him) and struck the victim with a broom handle that the defendant had in his pocket).

In finding that the "more than minimal planning" enhancement applied in <u>Huie</u>, the Fourth Circuit concluded that the defendant's assault of the correctional officer -- which was done for the purpose of obtaining a transfer to another facility, timed to occur when no other officers would be around and involved the defendant's wearing of protective gear -- was not a "spur of the moment assault, as one might expect following a verbal altercation . . . [and that the defendant] did not merely take advantage of an opportunity that presented itself at the last minute."  210 F.3d at *1.

The same reasoning applies here.  On the night of the presidential election, November 4, 2008, the defendants, upon learning of President Barack Obama's victory, decided to drive to predominantly African-American neighborhoods in Staten Island for the specific purpose of finding and assaulting African-Americans in retaliation for a black man becoming president.  The four defendants set out in Nicoletti's car, armed with a collapsible baton (or "ASP") and a metal pipe,[3] and drove around Staten Island hunting for victims in the Park Hill and Port Richmond sections, both of which have significant African-American populations.

Over the course of almost two hours, the defendants carried out three separate assaults and contemplated others.[4]

_____

[3] Nicoletti had stolen two ASPs during a break-in of a police car he and others had perpetrated several months earlier. Nicoletti gave one of the ASPs to Garaventa, and the other ASP was found in Nicoletti's dresser during a search of his home by Federal Bureau of Investigation agents.

[4] As they drove through the streets of Staten Island, the defendants were constantly on the look-out for victims.  At one location, they spotted a small group of African-American youths and were planning to attack them.  However, the defendants

With each assault, the defendants carefully selected their victim
to make sure that he was alone and that the surrounding area was
relatively isolated.[5]  The defendants specifically avoided
commercial areas where they might be identified, stopped or
arrested.  With each attack, the defendants sought to ambush the
victim, including Nicoletti turning off his headlights of his car
as the defendants approached the area where the victim was
located.  During the last attack, the defendants devised a plan
that would completely conceal their identities by driving up to
the victim from behind and striking him with the police baton
without stopping or exiting the car.  Thus, the three assaults
carried out by the defendants, pursuant to a plan to retaliate
against African Americans for the election of President Obama,
were far from spontaneous or "spur of the moment."

        Furthermore, after the assaults, the defendants engaged
in "significant steps to conceal the crime."  Cropper, 42 F.3d at
758.  The defendants fled from the scene of each assault.  See
Calbat, 266 F.3d at 364 ("more than minimal planning" enhancement
based on defendant trying to flee the scene).  They failed to
report any of these incidents to the police, including the last
attack, which resulted in the victim, Ronald Forte, being run
over and left unconscious (and possibly dying) on the street.[6]
See Perrien, 274 F.3d at 940 (enhancement applied where defendant
failed to tell his wife about, or get medical attention for, his
children's injuries); cf. Conatser, 514 F.3d at 529 n. 1
(enhancement could be based on correctional officers' failure to
provide medical care to inmates they had beaten).  Lastly, the
defendants concocted a cover-up to explain Nicolettti's shattered
windshield, which resulted from Forte being thrown into it.
After returning to Nicoletti's house, three of the defendants
used a brick to scratch Nicoletti's car and placed the brick

_____

aborted the plan when the group of youths grew in number and the
defendants became concerned about being outnumbered.

[5]    Although Application Note 2 indicates that "waiting to
commit the offense when no witnesses were present would not alone
constitute more than minimal planning," there are other factors
here that justify the application of the enhancement.

[6]    While it would be unusual for the perpetrator of a crime to
report his own criminal act, given the seriousness of the Forte
incident, it can be inferred that the defendants' failure to call
911 and anonymously report the incident so that Forte could
receive medical attention was motivated by the defendants' desire
to conceal their criminal activities.

nearby to support their story that the windshield had been shattered by a brick-wielding vandal while parked outside Nicoletti's home.  Immediately after the assaults, Nicoletti's family had the shattered windshield replaced.

While the assaults themselves might be seen as more spontaneous or opportunistic because the individual victims were not chosen until moments before the attack, it is the defendants' over-arching plan to assault African Americans in response to the election, their preparation in carrying out the plan and each of the assaults, and their subsequent efforts to conceal the crime that constitute more than minimal planning.

For all of these reasons, a two-level enhancement for "more than minimal planning" should be applied in this case.

Very truly yours,

BENTON J. CAMPBELL
United States Attorney


By: _____/s/_____

Pamela K. Chen
Margo K. Brodie
Assistant U. S. Attorneys


cc:  The Honorable Carol B. Amon
     Robert LaRusso, Esq.
     Clerk of the Court (via ECF)